IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:19-cr-160-HEH |
| v. | 18 U.S.C. § 1349<br>Conspiracy to Commit Mail and Wire Fraud |
| CHIRAG JANAKBHAI CHOKSI, | (Count 1) |
| SHACHI NAISHADH MAJMUDAR, | 18 U.S.C. §§ 1341 and 2<br>Mail Fraud and Aiding and Abetting |
| SHEHZADKHAN KHANDADKHAN PATHAN, | (Counts 2, 3 and 4) |
| | 18 U.S.C. §§ 1343 and 2<br>Wire Fraud and Aiding and Abetting |
| PRADIPSINH DHARMENDRASINH PARMAR, | (Counts 5 and 6) |
| SUMER KANTILAL PATEL, | 18 U.S.C. § 1028A<br>Aggravated Identity Theft |
| and | (Counts 7, 8, and 9) |
| JAYESHKUMAR PRABHUDAS DELIWALA, | Forfeiture Allegation |
| *Defendants.* | |

June 2020 Term – at Richmond, Virginia

**SECOND SUPERSEDING INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Indictment, unless stated otherwise:

1. The defendants, CHIRAG JANAKBHAI CHOKSI, SHACHI NAISHADH MAJMUDAR, SHEHZADKHAN KHANDADKHAN PATHAN, PRADIPSINH DHARMENDRASINH PARMAR, SUMER KANTILAL PATEL, and JAYESHKUMAR

PRABHUDAS DELIWALA were members of a criminal conspiracy who had members that impersonated law enforcement officials that tricked and coerced victims into mailing and shipping cash to other conspiracy members by convincing the victims that it was in their best interests to do so.

2. The conspiracy operated cells in multiple states, including New Jersey, Minnesota, California, Indiana, Texas, and Illinois where packages of cash shipped by victims were received by members of the conspiracy, who then further processed and distributed the victims' moneys in accordance with the direction of other conspiracy members.

3. The conspiracy members targeted a large percentage of elder Americans for victimization.

4. Conspirators regularly communicated using WhatsApp Messenger ("WhatsApp"). WhatsApp is a free, cross-platform communication application available for Apple, Android, and Windows cellular telephones, as well as Mac and Windows PC computers. WhatsApp enables users to communicate securely over the Internet with end-to-end encryption using a variety of formats, including video, voice calls, and SMS (text) messaging.

## SCHEME AND ARTIFICE

5. The purpose of the scheme and artifice to defraud was for CHIRAG JANAKBHAI CHOKSI, SHACHI NAISHADH MAJMUDAR, SHEHZADKHAN KHANDADKHAN PATHAN, PRADIPSINH DHARMENDRASINH PARMAR, SUMER KANTILAL PATEL, JAYESHKUMAR PRABHUDAS DELIWALA, and other members of the conspiracy to enrich themselves financially by defrauding victims of money by impersonating law enforcement officials.

2

## MANNER AND MEANS

6. To execute the above-described scheme, the conspirators used a variety of fraudulent scenarios to engage victims. The scheme often started with automated, previously recorded phone calls, commonly referred to as "robocalls," which contained messages designed to create a sense of urgency with unsophisticated and/or unsuspecting recipients. These messages told the recipients that they had some sort of serious legal problem. Often the purported problem related to potential criminal charges for the victim, tax problems, or the risk of losing a federal benefits program such as Social Security payments. Victims were informed that if they did not act immediately in accordance with the demands of the callers then there would be drastic consequences. These consequences included threats of immediate arrest and/or significant financial penalties. Some call recipients were instructed that in order to prevent these dire consequences they should call a particular phone number for further instruction.

7. When a conspirator would speak with the victim and identify themselves as a government official, the conspirator would reinforce the need for the victim to take immediate action to avoid consequences. Conspirators tricked and coerced victims to send cash to an address, supposedly belonging to a law enforcement or other government agency, as a demonstration of good faith while the criminal investigation was ongoing. In schemes involving supposed potential criminal charges, victims were assured that if they were cleared of involvement in criminal activity after a thorough investigation then their money would be returned to them.

8. In another scenario, a conspirator would contact a victim posing as a loan officer offering to provide the victim a loan. A number of victims defrauded in this scenario had recently applied for loans from legitimate lenders. The conspirator would eventually inform the

3

victim that they had been approved for the loan, and that the loan was being deposited into the victim's bank account. In return for receipt of this purported loan, the conspirator instructed the victim to send money back as directed as a demonstration of good faith or as a loan payment.

9. Yet another technique used by the perpetrators was to contact a victim to offer maintenance assistance with their home computer, convincing the victim that there was a problem with their home computer. Sometimes this was done by tricking the victim into downloading software that perpetrators used to actually create problems with the victim's computer. The perpetrator would then inform the victim that in order for their computer to be repaired the victim would have to send money as directed by the conspirator.

10. Some victims were directed by a conspirator to send cash via the mail or a parcel delivery service. These victims were instructed to send the bulk cash via FedEx, UPS and/or the U.S. Postal Service ("USPS") using shipping methods that provided tracking numbers, and further to provide the tracking numbers of their shipments to members of the conspiracy.

11. Conspirators directed other victims to send money via a wire service. These victims were instructed to send money via Western Union, MoneyGram and/or Walmart to Walmart money transfer, and further to provide the reference number for the wire transfer to members of the conspiracy.

12. Members of the conspiracy commonly referred to as "money mules" would pick up the bulk cash shipments sent to the fraudulent law enforcement addresses, often presenting counterfeit identification documents incorporating stolen or fictitious identities.

13. Money mules would similarly pick up the wire transfers from victims using the reference numbers provided by the victims.

4

14. The conspiracy's money mules would pocket some portion of cash for themselves and deposit the remaining amount in bank accounts created and/or accessed by other conspiracy members.

15. In furtherance of the scheme, SHEHZADKHAN KHANDADKHAN PATHAN committed the following actions among others:

    a. Recruited and supervised money mules for multiple cells in multiple states;

    b. Caused to be obtained and distributed counterfeit identification documents, including counterfeit driver's licenses, to money mules for their use in retrieving shipments of cash and wire transfers of funds from victims;

    c. When money mules provided PATHAN information regarding their current location and the fraudulent names associated with the counterfeit driver's licenses that they had ready for use to pick up money from victims, PATHAN communicated this information via WhatsApp to other conspirators working in the call center for their use when instructing victims regarding payments;

    d. Alerted money mules of inbound packages of cash coming from victims, identifying the name and address of the victim, the method of shipment, and the money mule's alias name and address to which the victims' cash was shipped;

    e.    Alerted money mules of wire transfers involving moneys sent by victims, and provided the applicable reference number so that the funds could be picked up; and

    f.    Provided bank account information to money mules and directed the money mules regarding which bank account to use when depositing the victims' money.

16.    In furtherance of the scheme, CHIRAG JANAKBHAI CHOKSI committed the following actions among others:

    a.    Possessed and used multiple counterfeit Pennsylvania driver's licenses to identify himself when picking up shipments of cash from victims;

    b.    At the direction of PATHAN, physically retrieved and signed for packages of cash sent by victims to the designated shipping address communicated to the victim by other members of the conspiracy;

    c.    Photographed and videoed himself, sometimes with the assistance of his codefendant, SHACHI NAISHADH MAJMUDAR, opening the packages sent by victims and counting the cash therein as a record that was provided to other conspiracy members for how much cash was received from the respective victims; and

    d.    At the direction of PATHAN, deposited cash obtained from victims in bank accounts that had been created and/or accessed by other members of the conspiracy.

17. In furtherance of the scheme, SHACHI NAISHADH MAJMUDAR committed the following actions among others:

    a. Used the Internet to access the FedEx and USPS websites and obtain status information related to the tracking numbers of shipments of cash sent by multiple victims;

    b. Videoed her codefendant, CHIRAG JANAKBHAI CHOKSI, opening packages sent by victims and counting the cash contained therein; and

    c. Deposited cash obtained from victims in bank accounts that had been created and/or accessed by other members of the conspiracy.

18. In furtherance of the scheme, PRADIPSINH DHARMENDRASINH PARMAR committed the following actions among others:

    a. At the direction of PATHAN, physically retrieved and signed for packages of cash sent by victims to the designated shipping address communicated to the victim by other members of the conspiracy;

    b. Photographed and videoed himself opening the packages sent by victims and counting the cash therein as a record that was provided to other conspiracy members for how much cash was received from the respective victims;

    c. Using WhatsApp, sent to PATHAN images of a counterfeit driver's licenses that incorporated a picture of PARMAR into the documents, which bore either true driver's license numbers that had been legally and officially assigned to other individuals or numbers that had not been legally and officially assigned to any individual;

7

    d.    Picked up money transfers sent by victims via Western Union, MoneyGram and Walmart to Walmart money transfers on behalf of, and at the direction of, PATHAN;

    e.    At the direction of PATHAN, deposited cash obtained from victims in bank accounts that had been created and/or accessed by other members of the conspiracy.

19. In furtherance of the scheme, SUMER KANTILAL PATEL committed the following actions among others:

    a.    At the direction of PATHAN, physically retrieved and signed for packages of cash sent by victims to the designated shipping address communicated to the victim by other members of the conspiracy;

    b.    Photographed and videoed himself opening the packages sent by victims and counting the cash therein as a record that was provided to other conspiracy members for how much cash was received from the respective victims;

    c.    Using WhatsApp, sent to PATHAN images of a counterfeit driver's licenses that incorporated a picture of PATEL into the documents, which bore either true driver's license numbers that had been legally and officially assigned to other individuals or numbers that had not been legally and officially assigned to any individual;

    d.    Picked up money transfers sent by victims via Western Union, MoneyGram and Walmart to Walmart money transfers on behalf of, and at the direction of, PATHAN; and

e. At the direction of PATHAN, deposited cash obtained from victims in bank accounts that had been created and/or accessed by other members of the conspiracy.

20. In furtherance of the scheme, JAYESHKUMAR PRABHUDAS DELIWALA committed the following actions among others:

a. Allowed photographs of himself, as well as his biographical information, to be used by others in the conspiracy for the purpose of creating counterfeit driver's licenses that he intended to use to pick up wire transfers sent by victims.

## COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

Beginning sometime before mid-2016 and continuing through at least December 2019, the exact dates being unknown, in the Eastern District of Virginia and within the jurisdiction of the Court, as well as elsewhere, defendants CHIRAG JANAKBHAI CHOKSI, SHACHI NAISHADH MAJMUDAR, SHEHZADKHAN KHANDADKHAN PATHAN, PRADIPSINH DHARMENDRASINH PARMAR, SUMER KANTILAL PATEL, and JAYESHKUMAR PRABHUDAS DELIWALA, did unlawfully and knowingly conspire together, as well with others both known and unknown to the grand jury, to commit an offense contained within Chapter 63 of Title 18 of the United States Code, in that they conspired to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of

executing the scheme and artifice to defraud: (a) delivered and caused the delivery of matter by private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341; and (b) transmitted and caused transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

(In violation of Title 18, United States Code, Section 1349.)

## COUNT TWO
(Mail Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

On or about May 23, 2019, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants CHIRAG JANAKBHAI CHOKSI and SHEHZADKHAN KHANDADKHAN PATHAN, aided, abetted, induced, counseled, and encouraged by each other and others, caused to be sent and delivered by Federal Express, a private and commercial interstate carrier, a package bearing tracking number 787443201636, addressed to "Aldo Ronald" at 9594 Grey Widgeon Place, Eden Prairie, Minnesota, containing $8,500 in U.S. Currency that was the property of, and had been sent by, an individual identified herein as C.P., of Chesterfield, Virginia.

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNT THREE
(Mail Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

On or about March 5, 2019, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants PRADIPSINH DHARMENDRASINH PARMAR and SHEHZADKHAN KHANDADKHAN PATHAN, aided, abetted, induced, counseled, and encouraged by each other and others, caused to be sent and delivered by Federal Express, a private and commercial interstate carrier, a package bearing tracking number 785822235244, addressed to "Neon Fredo" at 55 Stratford Village, Lancaster, Pennsylvania, containing $20,000 in U.S. Currency that was the property of, and had been sent by, an individual identified herein as C.B.M., of Norfolk, Virginia.

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNT FOUR
(Mail Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

On or about April 1, 2019, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendant JAYESHKUMAR PRABHUDAS DELIWALA and SHEHZADKHAN KHANDADKHAN PATHAN, aided, abetted, induced, counseled, and encouraged by each other and others, caused to be sent and delivered by Federal Express, a private and commercial interstate carrier, bearing tracking number 774819863133, containing 20 counterfeit identification documents that the defendant intended to use in connection with the scheme.

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNT FIVE
(Wire Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

On or about December 19, 2018, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants PRADIPSINH DHARMENDRASINH PARMAR and SHEHZADKHAN KHANDADKHAN PATHAN, aided, abetted, induced, counseled, and encouraged by each other and others, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, received and obtained money that had been sent by victim, L.F.C., to wit: a MoneyGram transfer of $820, reference number of 497-14-333, sent by L.F.C. of Newport News, Virginia, to receiver "LARRY A LAUZON" in North Carolina.

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT SIX
(Wire Fraud)

The sections of this Second Superseding Indictment entitled "General Allegations," "Scheme and Artifice," and "Manner and Means" are incorporated by reference as if fully set forth here.

On or about March 23, 2019, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants SUMER KANTILAL PATEL and SHEHZADKHAN KHANDADKHAN PATHAN, aided, abetted, induced, counseled, and encouraged by each other and others, did knowingly transmit

and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, received and obtained money that had been sent by victim, L.M.S., to wit: a Walmart to Walmart transfer of $1,995, reference number of 922093569, sent by L.M.S. of Alvin, Texas, to receiver "CALEB N CRANSTONE" in Virginia.

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN
(Aggravated Identity Theft)

On or about June 14, 2019, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendants, CHIRAG JANAKBHAI CHOKSI, aided, abetted, induced, counseled, and encouraged by SHEHZADKHAN KHANDADKHAN PATHAN and others, did knowingly and unlawfully possess and use without lawful authority the means of identification of another person, that is, a counterfeit Pennsylvania driver's license bearing driver's license number 24 309 808 that had been lawfully issued to an individual identified herein as K.L.S., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: conspiracy to engage in mail and wire fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One above.

(In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.)

## COUNT EIGHT
(Aggravated Identity Theft)

On or about December 19, 2018, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendants, PRADIPSINH DHARMENDRASINH PARMAR, aided, abetted, induced, counseled, and encouraged by SHEHZADKHAN KHANDADKHAN PATHAN and others, did knowingly and unlawfully possess and use without lawful authority the

13

means of identification of another person, that is, a counterfeit Pennsylvania driver's license bearing driver's license number 23 359 534 that had been lawfully issued to an individual identified herein as M.C.P., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: conspiracy to engage in mail and wire fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One above, and wire fraud, in violation of 18 U.S.C. § 1343, as alleged in Count Five above.

(In violation of Title 18, United States Code, Sections 1028A(a)(l) and 2.)

## COUNT NINE
(Aggravated Identity Theft)

On or about March 23, 2019, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendants, SUMER KANTILAL PATEL, aided, abetted, induced, counseled, and encouraged by SHEHZADKHAN KHANDADKHAN PATHAN and others, did knowingly and unlawfully possess and use without lawful authority the means of identification of another person, that is, a counterfeit Pennsylvania driver's license bearing driver's license number 28 645 633 that had been lawfully issued to an individual identified herein as J.R.C., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: conspiracy to engage in mail and wire fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One above, and wire fraud, in violation of 18 U.S.C. § 1343, as alleged in Count Six above.

(In violation of Title 18, United States Code, Sections 1028A(a)(l) and 2.)

## FORFEITURE

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendants are hereby notified that upon conviction of any offense set forth in Counts One through Six of the Second Superseding Indictment, such defendant shall forfeit to the United States any property

which constitutes, or is derived from, proceeds obtained directly or indirectly, as the result of such offenses.

(All in accordance with Title 18, United States Code, Sections 982(a)(2) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

_____
FOREPERSON

G. ZACHARY TERWILLIGER
United States Attorney

By: _____
Brian R. Hood
Kaitlin Gratton Cooke
Assistant United States Attorneys

15